UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

GUY ANDERSON,

                        Petitioner,

        v.                                                      9:19-CV-1123
                                                                (BKS)

MARK MILLER, Superintendent,
Green Haven Correctional Facility[1],

                        Respondent.

APPEARANCES:                                    OF COUNSEL:

GUY ANDERSON
Petitioner pro se
13-A-3588
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582

HON. LETITIA JAMES                              MICHELLE ELAINE MAEROV, ESQ.
Attorney for Respondent                         Ass't Attorney General
New York State Attorney General
28 Liberty Street
New York, NY 10005

BRENDA K. SANNES
Chief United States District Judge

## DECISION and ORDER

## I.    INTRODUCTION

        Petitioner Guy Anderson ("Petitioner") seeks federal habeas corpus relief pursuant to

28 U.S.C. § 2254.  Dkt. No. 1 ("Pet.").  Respondent opposed the petition.  Dkt. No. 30

(Memorandum of Law in Opposition); Dkt. No. 31 (Answer); Dkt. No. 32 (State Court

---

        [1]  Mark Miller, Superintendent, Green Haven Correctional Facility, is substituted for Mark Royce.  Fed. R.
Civ. P. 25(c).

Records).  Petitioner filed a traverse.  Dkt. No. 36.

For the reasons that follow, the habeas petition is denied and dismissed.

## II.    RELEVANT BACKGROUND[2]

### A. The Charges and the Investigation

In March 2012, Petitioner was charged, with other defendants, in a two hundred and sixty-one count indictment with conspiracy in the second degree, and other narcotic offenses. SR at 347.[3]  The charges stemmed from Petitioner's involvement in an alleged conspiracy to sell cocaine and heroin in various counties in New York and Vermont.  *Id*. at 464.

During the investigation, Supreme Court Justice Joseph C. Teresi issued a series of eavesdropping warrants.  SR at 127-131, 951-1042.  The first warrant, issued on October 5, 2011, authorized the Organized Crime Task Force ("OCTF") to intercept and record telephonic and electronic communications occurring over telephones subscribed to Petitioner's alleged co-conspirators.  *Id*. at 1036-1042.  Subsequent amended and extended warrants were issued from October 25, 2011 until February 1, 2012.  *Id*. at 127-131, 951-1041.  The February 1, 2012 amended warrant included telephonic and electronic communication over a telephone assigned to Petitioner (the "7198 phone").  *Id*. at 267-271, 413.

Upon the State's applications, and pursuant to Criminal Procedure Law ("CPL")

---

[2]  The Court will summarize only the background and history relevant to this Court's review of the habeas petition.

[3]  "SR" refers to the state court record, found at Dkt. No. 32.  Citations to the submission refer to the pagination generated by CM/ECF, the Court's electronic filing system.

2

§700.50(2)[4], Judge Teresi issued sealing orders on November 3, 2011, December 1, 2011, December 9, 2011, December 23, 2011, and January 20, 2012.  SR at 272, 935-936, 939-944, 949-950.  Supreme Court Justice Thomas Breslin issued sealing orders on November 14, 2011, November 28, 2011, and January 13, 2012.  *Id*. at 272-274, 277-280, 283-284, 937-938, 845-948.  On February 3, 2012, Albany City Court Judge Helena Heath-Roland issued a sealing order which included telephone communications from Petitioner's telephone. *Id*. at 285-287, 933-934.

### B.  The Motion to Suppress

In a counseled omnibus motion, Petitioner moved to suppress evidence obtained through the eavesdropping warrants arguing, in relevant part, that the OCTF failed to comply with the statutory requirements related to sealing the evidence.  SR at 297-312.  The Albany County Court held a *Dunaway-Mapp*[5] hearing on February 7, 2013.  SH at 1.[6]

At the hearing, Investigator Dennis Guiry ("Inv. Guiry"), the lead investigator with the OCTF in relation to Petitioner's case, testified that all calls intercepted pursuant to wiretapping were preserved on DVD-ROMS.  SH at 10-11.  Inv. Guiry testified that two different scenarios required a sealing order from a judge; if the thirty-day warrant was about

---

[4] CPL § 700.50(2) provides, "[i]mmediately upon the expiration of the period of an eavesdropping or video surveillance warrant, the recordings of communications or observations made pursuant to subdivision three of section 700.35 must be made available to the issuing justice and sealed under his directions."

[5] A *Dunaway* hearing is used to determine whether an arrest is supported by probable cause, *see Dunaway v. New York*, 442 U.S. 200 (1979) while "[a] *Mapp* hearing tests the constitutionality of the seizure of physical evidence.  *See Mapp v. Ohio*, 367 U.S. 643 (1961).

[6] "SH" refers to the suppression hearing transcript, found at Dkt. No. 32-2.  Citations to the submission refer to the pagination generated by CM/ECF, the Court's electronic filing system.

to expire or if nothing relevant was captured from the wiretap.[7]  *Id*. at 12, 30.  In this case, discs were sealed on nine different occasions.  *Id*. at 14-15.  Of relevance herein, Inv. Guiry testified he sought sealing orders from Judge Breslin in November 2011 because Judge Teresi was out of town and "unavailable."  SH at 20-22.  The November 14, 2011 and November 28, 2011 sealing orders involved telephone calls intercepted from Petitioner's co-defendant's telephones.  *Id*. at 18-22.  On February 3, 2012, Inv. Guiry obtained a sealing order from City Court Judge Heath-Roland for communication intercepted from Petitioner's telephone.  *Id.* at 22.   Inv. Guiry testified he "utilized" Judge Heath-Roland because Judge Teresi was "out of town" and Judge Breslin was "unavailable."  *Id*. at 24.  To assist Inv. Guiry with his testimony, the prosecutor provided a document (Exhibit 3) with notes about dates, times, and the reasons for sealing.  *Id*. at 14; SR at 338.

On cross examination by Petitioner's counsel, Inv. Guiry testified that Judge Teresi directed them to "go to Judge Breslin" if Judge Teresi was out of town.  SH at 29.  On cross examination by co-defendant's counsel, Inv. Guiry testified that, on November 14, 2011, November 28, 2011, and February 3, 2012, an OCTF staff member called Judge Teresi's chambers and was told that the judge was not available or out of town.  *Id*. at 42, 44, 46, 48.  Based upon Judge Teresi's directives, Inv. Guiry met with Judge Breslin on November 14, 2011 and obtained the sealing order.  *Id*. at 44.  On November 28, 2011, upon learning that Judge Teresi was in Baltimore, Maryland, Inv. Guiry made the decision not "to drive five hours to see the judge."  *Id*. at 45.  With respect to the February 3, 2012 sealing order, Inv. Guiry testified Judge Breslin was "not in the building at the time that we wished to seal."  SH

---

[7]  Inv. Guiry explained the process of "sealing" the discs on cross examination.  SH at 36.  Inv. Guiry stated he would physically seal the discs in a cardboard box with "clear masking tape" in front of the judge.  *Id*.  Inv. Guiry and the judge would sign the box, with the date and time and his/her initials.  *Id*.

at 49-50.  Inv. Guiry's staff attempted to locate another Supreme Court judge available at that date and time.  *Id*. at 51.  Inv. Guiry was unaware if any efforts were made to locate any other Supreme Court judges in the Third Judicial District.  *Id*. at 51-52.  Inv. Guiry was "directed by the prosecutor and/or [his] supervisor" to meet with Judge Heath-Roland.  *Id*. at 52.

At the conclusion of the suppression hearing, the court afforded the parties an opportunity to submit additional briefing.  SH at 123.  On February 13, 2013, Petitioner's counsel submitted a Memorandum of Law in support of his motions for suppression and/or dismissal.  SR at 339-341.

In a Decision and Order dated February 19, 2013, the Albany County Court denied Petitioner's motion to suppress.  SR at 346-355.   Of relevance herein, the court addressed Petitioner's claim that the statutory sealing requirements were not met.  *Id*. at 353-354.  The court found that Petitioner had standing to challenge only the February 3, 2012 sealing order signed by Judge Heath-Roland as that was the only order involving a wiretap of Petitioner's telephone.  *Id*. at 354.  The court cited to CPL § 700.50(2) and noted, "[c]ourts have consistently held that the sealing requirement of the statute be strictly construed to 'effectuate the purposes of preventing tampering, alterations, or editing of the tapes, aiding in establishing a chain of custody and protecting the confidentiality of the tapes.' "  *Id*.  The court noted that "unavailability of the issuing justice is not a valid excuse for the failure to timely seal tapes" and that the People must seek "on call judges who are capable of issuing a sealing order."  *Id.* at 354-355.  The court credited Inv. Guiry's testimony that his search for an alternate Supreme Court justice was "fruitless" due to the late nature of the request and concluded that the sealing order signed by Judge Heath-Roland satisfied the statutory

5

sealing requirement.  SR at 355.

### C.  Trial

At the conclusion of the joint jury trial, on May 20, 2013, Petitioner was convicted of conspiracy in the second degree, criminal sale of a controlled substance in the first degree (four counts), criminal sale of a controlled substance in the second degree (three counts), criminal sale of a controlled substance in the third degree (two counts), attempted criminal possession of a controlled substance in the first degree (two counts), attempted criminal possession of a controlled substance in the third degree, criminal possession of a controlled substance in the third degree and operating as a major trafficker.  SR at 464.  Petitioner was sentenced as a persistent felony offender and a violent predicate offender to an aggregate prison term of 165 years to life.  *Id*.

### D.  Direct Appeal

Appellate counsel filed a brief in the Appellate Division, Third Department.[8]  SR at 1-78.  Petitioner filed a pro se supplemental brief and appendix.  *Id.* at 79-375.  In the pro se brief, of relevance herein, Petitioner argued that he had standing to challenge the People's compliance with the sealing requirements related to the November 14th and November 28th sealing orders and asked the court to consider his challenges to the People's compliance with the sealing requirements.  *Id.* at 90-98.  Petitioner also argued that the February 3, 2012 sealing order did not comply with CPL § 700.50(2) because it was issued by a city court judge.  *Id*. at 103-110.  The People opposed.  *Id*. at 376-462.

On April 27, 2017, the Appellate Division modified the judgment as "a matter of

---

[8]  The record does not clearly indicate when counsel filed the appeal.

discretion in the interest of justice" and resentenced defendant to an aggregate prison term of 55 years to life and affirmed.  *People v. Anderson*, 149 A.D.3d 1407, 1408 (2017).  The court found, contrary to the county court's determination, that Petitioner had standing to challenge the November 2011 warrants.  *Id.* at 1408.  In that respect, the court ruled,

> As for defendant's contention that the sealing requirements of CPL 700.50 (2) and 700.65 (3) were not complied with in that several of the sealing orders were not signed by the justice who issued the warrants, the sealing requirements are strictly construed and the People are required to offer a satisfactory explanation for any delay that may take place in sealing the evidence (see *People v Winograd*, 68 NY2d 383, 394-395 [1986]; *People v Mullen*, 152 AD2d 260, 267 [1989]). In a county where other justices are available, if the People are unable to locate the issuing justice, they are required to find another justice to issue the sealed order (*see People v Winograd*, 68 NY2d at 394-395; *People v Gallina*, 66 NY2d 52, 59-60 [1985]; *People v Fonville*, 247 AD2d at 127). Here, investigators complied with this requirement and avoided undue delay by locating another justice to timely seal the evidence on three occasions when the issuing justice was unavailable.

*Anderson*, 149 A.D.3d at 1409.  The court also found that Petitioner failed to preserve his claim that a judge who issued a sealing order was unauthorized to do so.  *Id*. at 1417.

On September 22, 2017, the New York Court of Appeals denied leave to appeal.  SR at 492.

### E.  The CPL § 440.10 Motion

In December 2019, Petitioner filed a pro se motion to vacate the conviction pursuant to CPL § 440.10.  SR at 595-630.  Petitioner argued his trial counsel was ineffective for (1) failing to investigate Judge Teresi's availability to execute the November 14th and November 28th sealing orders; (2) failing to investigate the circumstances surrounding the defective February 3rd sealing order; and (3) failing to preserve challenges to the February 3rd sealing

7

order.  *Id.*  The People opposed the motion.  *Id*. at 696-713.

On May 21, 2020, the county court denied Petitioner's motion.  SR at 745-747.  The court rejected Petitioner's ineffective assistance claims related to the November 14th and November 28th sealing orders, citing to CPL § 440.10(2)(a) and the Appellate Division's decision.  *Id*. at 747.[9]  The court rejected the ineffective assistance claims related to the issuance of the February 3rd sealing order, citing to CPL § 440.10(3)(b) and the February 2014 Albany County Court Decision and Order.  *Id*.[10]  Finally, the court considered Petitioner's argument that his counsel was ineffective for failing to join co-defendant's counsel's objection to the February 3rd sealing order on the merits, and rejected it.  SR at 747.  The court noted that "co-defendant Pearson did not challenge the trial court's determination concerning the legality of the February 3, 2012 sealing order," and concluded that "trial counsel cannot be faulted for 'failing to advance a losing argument' and Petitioner "otherwise failed to 'demonstrate the absence of a strategic or other legitimate explanations' for counsel's allegedly deficient conduct."  *Id*.

Petitioner sought leave to appeal, and the Appellate Division and Court of Appeals denied his requests.  SR at 746, 773.

## III.   THE PRESENT PETITION

On September 11, 2019, Petitioner filed a petition seeking federal habeas relief on the following grounds: (1) trial counsel was ineffective; and (2) the prosecutor engaged in

---

[9]  The Appellate Division however, did not consider an ineffective assistance of counsel argument. *Anderson*, 149 A.D.3d at 1407.

[10]  The 2014 Albany County Court decision, however, did not consider an ineffective assistance of counsel claim.

misconduct because he failed to correct false or misleading testimony.[11]  *See generally* Pet.;

Dkt. No. 36.  In his submission, Petitioner explained that he had not exhausted his ineffective

assistance of counsel claim or his prosecutorial misconduct claim because he "recently

acquired some of the necessary proof through FOIL and await [sic] additional pertinent

documents."  Pet. at 7, 9.  Petitioner alleged he was "working on" a CPL 440.10 motion.  *Id*.

Petitioner did not identify his "recently acquired" proof and did not elaborate on what

additional pertinent documents he was attempting to obtain through FOIL.

On September 18, 2019, Petitioner filed a motion to stay his Petition pending

resolution of his CPL §440.10 post-conviction motion.  Dkt. No. 3.  Petitioner claimed he

needed additional time to obtain a new law clerk to assist him in reading the record

associated with the Petition, conducting his legal research, and completing and filing a 440

motion.  *Id*.  In a Decision and Order filed on October 16, 2019 (the "October Order"), this

Court granted Petitioner's motion, and directed Petitioner to file proof of his motion in state

court as well as monthly status reports apprising the Court of the procedural posture of the

state court litigation.  Dkt. No. 7.  In December 2019, Petitioner filed a CPL § 440.10 motion

arguing that his trial counsel was ineffective.[12]  SR at 597-605.

On August 25, 2020, Petitioner filed a notice of motion to amend his Petition.  Dkt. No.

24.  The motion did not include a request for further a stay.  In a Decision and Order filed on

September 17, 2020, the motion to amend was denied as moot, the stay was lifted, and

Respondent was directed to answer the Petition.  Dkt. No. 25.

---

[11]  Although Petitioner raised additional grounds for habeas relief, he withdrew these claims in his reply to
this Court.  *See* Dkt. No. 36 at 5.  As such, this Court deems the claims abandoned.

[12]  The CPL 440 motion did not include any arguments related to prosecutorial misconduct.

## IV.    DISCUSSION

### A.  Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record before the state court, the state court's decision: (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. §§2254(d)(1), (2); *Cullen v. Pinholster*, 563 U.S. 170, 180-81, 185 (2011); *Premo v. Moore*, 562 U.S. 115, 120-21 (2011); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).  This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt."  *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted)).

The Supreme Court has repeatedly explained that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents.' "  *Nevada v. Jackson*, 569 U.S. 505, 508-509 (2013) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see also Metrish v. Lancaster*, 569 U.S. 351, 358 (2013) (explaining that success in a habeas case premised on § 2254(d)(1) requires the petitioner to "show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'") (quoting *Richter*, 562 U.S. at 103)).

Additionally, the AEDPA foreclosed "using federal habeas corpus review as a vehicle

10

to second-guess the reasonable decisions of state courts." *Parker v. Matthews*, 567 U.S. 37 (2012) (per curiam) (quoting *Renico,* 559 U.S. at 779). A state court's findings are not unreasonable under §2254(d)(2) simply because a federal habeas court reviewing the claim in the first instance would have reached a different conclusion. *Wood v. Allen*, 558 U.S. 290, 301 (2010). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." *Schriro*, 550 U.S. at 473.

Federal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with "clear and convincing evidence." *Schriro*, 550 U.S. at 473-74 (quoting § 2254(e)(1)). "A state court decision is based on a clearly erroneous factual determination if the state court failed to weigh all of the relevant evidence before making its factual findings." *Lewis v. Conn. Comm'r of Corr.*, 790 F.3d 109, 121 (2d Cir. 2015). Finally, "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits[.]" *Johnson v. Williams*, 568 U.S. 289, 301 (2013).

### B. Ineffective Assistance of Counsel

Petitioner claims his counsel was ineffective because he: (1) failed to investigate the availability of Judge Teresi related to the November 14th and November 28th sealing orders; (2) failed to investigate the availability of other Supreme Court judges to execute the February 3rd sealing order; and (3) failed to join co-defendant counsel's challenge to the February 3rd sealing order. Pet. at 26-29; Dkt. No. 36 at 5-19. Respondent argues Petitioner's ineffective assistance of counsel claim related to "counsel's handling of the February 3 sealing order" is procedurally barred under CPL § 440.10(3)(b). Dkt. No. 30 at

11

35-36.  Respondent also contends that the ineffective assistance of counsel claims lack

merit.  *Id*. at 29-39.

### 1. Procedural Bar

Substantive review of a habeas claim is prohibited if the state court rested its decision

on " 'a state-law ground that is independent of the federal question and adequate to support

the judgment.' "  *Walker v. Martin*, 562 U.S. 307, 315 (2011) (quoting *Beard v. Kindler*, 558

U.S. 53, 55 (2009)) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991))).  "In order

for a state procedural bar to be an adequate basis to bar habeas review, it must be "firmly

established and regularly followed in the specific circumstances of the case."  *Clarke v.*

*Goord*, No. 07-CV-0366, 2007 WL 2324965, at *2 (E.D.N.Y. Aug. 10, 2007) (reasoning that

the issue is not whether C.P.L. § 440.10(2)(c) "is inadequate generally, but whether it was

misapplied in this specific case") (citing *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003)).

The Court may review the claim on the merits if the cited rule is "inapplicable."  *See Battee v.*

*Phillips*, No. 1:04-CV-04334, 2010 WL 2026443, at *9 (E.D.N.Y. May 20, 2010).

In the state court decision resolving Petitioner's § 440 motion, the court applied CPL §

440.10(3)(b) and cited to the February 2013 Albany County Court Decision and Order issued

after the suppression hearing.  The court denied Petitioner's ineffective assistance of counsel

claim, as it related to the February 3rd sealing order holding:

> the court found that "the sealing order signed by [Albany City
> Court] Judge Heath-Roland (only after it was established that no
> Supreme Court justices were available) satisfies the statutory
> sealing requirement."  As the issue raised in support of the
> defendant's instant ineffective assistance of counsel motion was
> previously decided by Albany County Court (Herrick, J.), the
> Court exercises its discretion in denying the defendant's motion
> on this ground, pursuant to CPL 440.10(3)(b).

SR at 747.

Upon review of petitioner's omnibus motion and the transcript of the suppression hearing, the Court finds the state court's reliance upon CPL § 440.10(3)(b) misplaced.  The issues resolved by Albany County Court in the February 19, 2013 Decision and Order involved: (1) the preclusion of identification testimony; (2) probable cause related to Petitioner's arrest; and (3) the suppression of tangible items seized pursuant to search and eavesdropping warrants.  SR at 346-355; SH 4-6.  The county court did not consider or decide any issues related to ineffective assistance of counsel.  Because CPL § 440.10(3)(b), "allows a state court to deny a motion to vacate a conviction where the ground raised was previously determined on the merits in a prior motion to vacate [,]" *see Jiang v. Larkin*, No. 12 CIV 3869, 2016 WL 1718260, at *22 (S.D.N.Y. Apr. 28, 2016), the state court misapplied the procedural bar.

Accordingly, the incorrect application of the state rule does not prevent this Court from reviewing this claim on the merits.  *See Ojar v. Greene*, No. 07-CV-3674, 2008 WL 428014, at *9 (E.D.N.Y. Feb. 15, 2008) (citing *Brown v. Sec'y for Dep't of Corr.*, 200 Fed. App'x 885, 887 (11th Cir. 2006)).

### 2.  Merits

To demonstrate constitutionally ineffective assistance of counsel, a petitioner must show that counsel's performance fell below an objective standard of professional reasonableness, and but for counsel's alleged errors, the result of the proceedings would have been different.  *Premo v. Moore*, 562 U.S. 115, 121-22 (2011); *Strickland v. Washington*, 466 U.S. 668, 694 (1984).  The standard "must be applied with scrupulous care" in habeas proceedings, because such a claim "can function as a way to escape rules

13

of waiver and forfeiture and raise issues not presented at trial [or in pretrial] proceedings[.]" *Premo*, 562 U.S. at 122.  "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney." *Harrington v. Richter*, 562 U.S. 86, 110 (2011) (quoting *Strickland*, 466 U.S. at 687) (internal quotation marks and further citation omitted).  A petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ... [and] that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).  Even if a petitioner can establish that counsel was deficient, he still must show that he suffered prejudice. *Strickland*, 466 U.S. at 693-94.

Meeting this burden is "never an easy task ... [and] establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Premo*, 562 U.S. at 122 (citations and internal quotation marks omitted).  When evaluating an ineffective assistance claim under section 2254(d), "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable-a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (internal quotation marks and citation omitted).  Federal habeas courts "must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)" because "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable." *Richter*, 562 U.S. at 105.  Instead, "the question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*.

"Constitutionally effective counsel embraces a 'wide range of professionally competent assistance' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.' " *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (citing *Strickland*, 466 U.S. at 690).

### a. Failure to Investigate

Petitioner contends counsel was ineffective because he failed to investigate Judge Teresi's availability related to the November 14th and November 28th sealing orders.  Pet. at 26.  Petitioner also argues counsel was ineffective because he failed to investigate whether other Supreme Court justices were available to execute the February 3rd sealing order, as opposed to Judge Heath-Roland.  *Id*.

In support of his § 440.10 motion, Petitioner submitted copies of the Albany County Courthouse Calendars for November 14, 2011, November 28, 2011, and February 3, 2012 and affidavits of his mother, Tracey Hodge Anderson Khan ("Khan") and Reverend Robert L. Dickerson ("Dickerson").  SR at 614, 669, 671, 672, 695, 722–725.  Khan and Dickerson detail their efforts to obtain documentation from the court related to Judge Teresi's schedule on November 14, 2011, November 28, 2011, and February 3, 2012 and aver that their investigation revealed that Judge Teresi was present in court on those days.  SR at 695, 722-725.  The November 14th and November 28th calendars contain the notation "conferences" next to Judge Teresi's name.  *Id.* at 730, 732.  Judge Teresi's name does not appear on the February 3rd calendar and the notation "criminal jury trial" (with a specific case identified), appears next to Judge Breslin's name.  *Id*. at 672.  Petitioner also submitted copies of emails regarding Judge Herrick's calendar which indicate Judge Herrick was in court on February

15

3rd. SR at 674-679.  Petitioner challenges counsel's failure to obtain evidence, such as the daily schedules for available judges, and argues that the evidence could have been used to discredit Inv. Guiry's testimony.  *See* Dkt. No. 36 at 7-12.

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary . . . [A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances[.]" *Strickland*, 466 U.S. at 691.  "It does not, however, compel defense counsel to investigate comprehensively every lead or possible defense[.]"  *Greiner*, 417 F.3d at 321 (citations omitted).  "The reasonableness of an investigation is obviously a reflection of the facts of a case. Thus, we must make a careful examination of counsel's efforts on a case-by-case basis."  *Id*. (citations omitted).

Upon review, the Court finds Petitioner cannot establish the first prong of the *Strickland* test: there is nothing in the record to support the conclusion that counsel's performance was objectively unreasonable.  In August 2012, before counsel represented Petitioner, the trial court denied a motion to suppress evidence, without a hearing.  SR at 923-924.  In December 2012, upon assuming Petitioner's representation, counsel moved for reconsideration of the suppression ruling and requested a suppression hearing related to tangible evidence seized pursuant to the eavesdropping warrants and, specifically, "issues concerning when, by whom, and the manner in which the eavesdropping 'tapes' were sealed."  *Id*. at 297-312, 331-33.  In support of the motion, Petitioner's counsel presented extensive briefing to the court.  Counsel noted that he had not received a "legally sufficient response" to Petitioner's Demand for Discovery and Inspection and a Demand for a Bill of

16

Particulars served upon the OCTF.  *Id*. at 300.  Counsel argued the OCTF violated CPL Article 700 on November 14th when they went to Judge Breslin to seal tapes, rather than Judge Teresi.  SR at 302, 331-333.   Counsel also argued that a suppression hearing was necessary to resolve the question as to why Judge Breslin was asked to seal the tapes on November 14th and alleged that the order obtained on November 28th was invalid.  *Id.* Moreover, counsel argued that Judge Heath-Roland was "expressly excluded from the category of persons who might lawfully seal a warrant[.]" *Id.* at 333.  Counsel successfully persuaded the court to re-open the issue and a suppression hearing was scheduled.  *Id.* at 909-910.

During the suppression hearing, Petitioner's counsel cross-examined Inv. Guiry. Counsel asked Inv. Guiry if a record was made during the sealing of the tapes.  SH at 28-29. Petitioner's counsel also asked Inv. Guiry if he obtained a printed calendar of available judges on the dates that he sought to seal discs.  *Id*. at 25.  Inv. Guiry stated that he had not and explained that if he needed to obtain a sealing order from a judge, other than Judge Teresi, he "call[ed] around to see who was there."  *Id*.  Counsel then asked Inv. Guiry:

> Q.  Did you ever -- when you were present with Judge Teresi relative to the various tapes in this case that he issued, did he ever indicate to you a designee?  Was there ever a conversation, "Listen, if I'm not available, you can take these to judge so-and-so." Was there any conversation like that?
>
> A. Yes.

SH at 29.  Petitioner's counsel asked Inv. Guiry to describe the conversation, and Inv. Guiry responded, "sometimes" Judge Teresi would tell them he would be out of town and that they should "go to Judge Breslin."  *Id*.

17

Petitioner's counsel then posed questions related to why tapes were sealed:

> Q.   And one of them was if the period when the conversation could be recorded pursuant to a warrant was about to expire; is that right?
>
> A.   Yes, sir.
>
> Q.   The law is very strict in that regard, that you can't basically run over the time period that you have been allotted to when you're eavesdropping, true?
>
> A.   True, sir.
>
> Q.   That's 30 days?
>
> A.   Yes, sir.
>
> Q.   The other reason that you gave was that there was nothing relevant coming over the eavesdropped phone, so I think you used the word you "pop" the disc out and you would arrange to have that sealed; is that right?
>
> A.   Yes, sir.

SH at 30.

With respect to the November 14th sealing order, Petitioner's counsel asked Inv. Guiry if Petitioner was "someone whose phone you were eavesdropping on at that particular time" and Inv. Guiry responded, "we were not." SH at 35.  Counsel asked Inv. Guiry why tapes were presented to Judge Breslin on November 14th and Inv. Guiry responded, "Pearson and Gibbs' phone went dead due to a search warrant on November 10th, 2011, and their phone calls were basically not being used." *Id*. at 37.  Inv. Guiry testified that, he "believed" that the third phone, belonging to Mario Perez, was no longer being utilized in any criminal act, "so we would pop the discs and have it sealed[.]" *Id*. at 37-38.  Upon further questioning, Inv. Guiry testified that the warrant for Pearson and Gibbs' phones had "23

days left" and Perez's phone had "26" days left. *Id*. at 38.  Therefore, Petitioner's counsel

asked:

> Q.  So actually you went to Judge Breslin a couple of weeks
> ahead of time when you would have to; isn't that true?
>
> A.  Yes, sir.

SH at 38-39.

Inv. Guiry also conceded that he sought the order from Judge Breslin a "couple of

weeks ahead of time when [he] would have to."  SH at 38-39.

On re-cross, Petitioner's counsel posed additional questions regarding Judge Breslin's

availability on February 3rd:

> Q. Were you aware that Judge Breslin had signed certain
> search warrants in connection with this particular case on
> February 3rd, 2012?
>
> A. Can you repeat the question?
>
> Q. Certainly. Were you aware that Judge Breslin, on February
> 3rd, 2012, at 12:55 p.m., had signed certain search warrants
> that were requested by the Organized Crime Task Force in
> connection with this case?
>
> A.  I believe he did.

SH at 55.

After the hearing concluded, Petitioner's counsel submitted a memorandum of law in

support of his motion.  SR at 339-341.  Counsel cited to CPL §§ 700.40 and 700.50(2) and

argued that the language of the statutes "must be strictly construed." *Id*. at 340.  Counsel

reasoned:

> The reason why Judge Breslin was approached on November
> 14, 2011, and not Judge Teresi, is not revealed by the claim that
> Judge Teresi might have been skiing in Massachusetts on that

> day.  The warrant in question would not expire until December
> 2, 2011, more than two weeks away.  Absolutely no showing
> was made that Judge Teresi would not be available on any of
> the days thereafter.  As it happens, Judge Teresi signed a
> warrant for Perez's telephone a week later, on November 21,
> 2011.  Why didn't OCTF wait?  Why would they allow Perez's
> phone calls to be unmonitored for a week?  It also raises
> questions about the viability of that warrant application which led
> to Defendant's alleged conduct.  Nor, had it been established
> that Judge Teresi had undertaken any steps to have the sealing
> done "under his direction."

SR at 340.  Moreover, counsel argued that the language of CPL § 700.50(2) *i.e.*, "must be

made available to the issuing justice" "leaves no room for improvisation or departure."  *Id*. at

341.

Based upon the record, the Court concludes that Petitioner's counsel representation

was not deficient.  Counsel zealously represented Petitioner throughout the suppression

hearing and it is clear from the record that counsel sought and obtained information and

investigation from OCTF and the prosecution related to the sealing orders.  Armed with that

information, counsel challenged the OCTF's procedures with respect to the sealing orders

and attempted to discredit Inv. Guiry during the suppression hearing.  *See Watson v. New

York*, No. 07 CIV. 1111, 2011 WL 4639812, at *3 (S.D.N.Y. Oct. 6, 2011) (finding that the

petitioner failed to prove that trial counsel failed to "wholly investigate" but, instead "made

strategic decisions regarding how best to challenge the People's case").

Even assuming arguendo that counsel's performance was deficient, Petitioner cannot

show prejudice; *i.e.* "that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different."  *See

Strickland*, 466 U.S. at 694.  While Petitioner argued in his § 440.10 motion that the daily

calendars prove that Judge Teresi was in the courthouse on the November 14th and

20

November 28th and, that Judge Breslin was present in the courthouse on February 3rd, *see* Dkt. No. 36 at 9-10, the record before the court does not support Petitioner's interpretation of the documents.  Petitioner has not proffered an affidavit from Judge Teresi, Judge Breslin, or any other Supreme Court judge attesting to his/her availability on the dates in question.  *See Broomfield v. U.S.*, No. 20-13372-A, 2020 WL 8771649, at *1 (11th Cir. 2020) (dismissing the petitioner's ineffective assistance claim because he "failed to show prejudice from counsel's decision not to call a state judge as a witness at the suppression hearing to testify regarding alleged signature and date discrepancies appearing on the search warrant, as he could not show to what the judge would have testified or how that testimony would have changed his suppression hearing.").

Moreover, it is well-settled that "the unavailability of the issuing justice [does not] constitute a valid excuse for the failure to timely seal the tapes produced by wiretap four in a county where several other justices are present each business day."  *People v. Fonville*, 681 N.Y.S.2d 420 (1998) (citing *People v. Winograd*, 68 N.Y.2d 383, 395 (1986)); *People v. Gallina*, 66 N.Y.2d 52, 60 (1985); *People v. Anderson*, 149 A.D.3d 1407, 1409 (3rd Dep't 2017) (rejecting the defendant's contention that the sealing requirements of CPL §§ 700.50(2) and 700.65(3) were not complied with because several orders were not signed by the justice who issued the warrants).

Finally, to the extend Petitioner claims the calendars could have been used to discredit Inv. Guiry's testimony, *see* Dkt. No. 36 at 7-12, that argument is unsupported by the record.  During the suppression hearing, co-defendant's counsel cross examined Inv. Guiry extensively regarding his efforts to locate Judge Teresi on November 14, 2011, November 28, 2011, and February 3, 2012 and Judge Breslin on February 3, 2012:

> Q. Did you understand that on November 14 [a] phone call was placed to Judge Teresi's chambers in attempting to reach him?
>
> A. That's my belief, yes.  I did not make the phone call.
>
> Q. Do you have a recollection of what you were told with respect to Judge Teresi's availability on November 14, 2011?
> A. He was not present.
>
> Q. Who conveyed that information to you?
>
> A. Probably one of our staff or secretaries.

SH at 41-42.

Inv. Guiry testified that he did not make any effort to locate Judge Teresi to determine where he "actually was on November 14, 2011." SH at 42-43. Inv. Guiry testified that his staff "made a phone call" and determined that Judge Breslin was available. *Id*. at 44.

With respect to the November 28th sealing order:

> Q. On November 28th, 2011, did Judge Breslin sign a sealing order?
>
> A. Yes.
>
> Q. And what efforts, if any, did your office make on November 28, 2011, to locate Judge Teresi?
>
> A. He was in Baltimore, Maryland.
>
> Q. How did you come by that information?
>
> A. Again, that would be through staff, through secondhand information.
>
> Q. In other words, the staff of the Organized Crime Task Force would call Judge Teresi's chambers?
>
> A. Yes, I would not call him.
>
> Q. Okay. And word came back from Judge [Teresi's] chambers that Judge [Teresi] was in Baltimore?

22

A.  Yes.

SH at 44.

Regarding the February 3rd sealing order:

Q.  And did Judge Heath-Roland sign a sealing on February 3, 2012?

A.  She did.

Q.  And what attempts did your office make on February 3, 2011, to locate Judge Teresi?

A.  Judge Teresi was out of town in Lake Placid, and Judge Breslin was not present for half the day.

Q.  With respect to Judge Teresi, in terms of him 10 being out of town, was that information that your office received from his chambers?

A.  I believe so.

Q.  And were you informed where Judge Teresi was on February 3rd, 2012?

A.  Yes.

Q.  What information was received by your office?

A.  He was out of town in Lake Placid.

Q.  And Lake Placid from Downtown Albany is approximately how many hours drive?

A.  Three and a half to four hours.

Q.  What was physically stopping you on February 3rd, 2012, from meeting up with Judge Teresi in Lake Placid on February 3, 2012?

A.  Again, the prosecutor and other supervisors would direct us to a different court, different judge.

23

SH at 48.

Co-defendant's counsel asked Inv. Guiry about efforts to locate other Supreme Court

Justices:

> Q.  Okay. And did you -- did your office attempt to locate any other Supreme Court Justices on February 3rd, 2012?
>
> A.  I believe they did.
>
> Q.  And what efforts were made to locate other Supreme Court Justices?
>
> A.  Again, I would not be making the phone calls, the staff would be attempting, and it appeared to be there was no Superior Court Judges available at that date and time.

SH at 51.

Inv. Guiry repeatedly testified he obtained information related to the whereabouts and

availability of judges from his staff and that he his supervisor or the prosecutor would "direct"

him to different judges.  Even assuming the calendars were in proper evidentiary form,

Petitioner has not established that the calendars would have been useful on cross

examination of Inv. Guiry because the information in the calendars is not inconsistent with

Inv. Guiry's testimony.

Because Petitioner cannot establish that "but for errors" on the part of his counsel, the

outcome of the suppression hearing would have been different, Petitioner has provided no

basis for concluding that he received ineffective assistance of counsel during for failing to

investigate.  This ground for habeas relief is therefore denied and dismissed.

### b.  Failure to Object to February 3rd Order as "Defective"

The trial court rejected this argument on the merits concluding that Petitioner's

counsel "cannot be faulted for 'failing to advance a losing argument' [ ] and as the [Petitioner]

24

has otherwise failed to 'demonstrate the absence of strategic or other legitimate explanations for counsel's allegedly deficient conduct.' " SR at 747.  This Court must view the state court decision through a doubly deferential lens.  *See generally Cullen*, 563 U.S. at 190.

According to the record, the majority of the recorded telephone calls involving Petitioner took place from November 2011 until January 16, 2012. SR at 390-401.  After January 16, 2012, the telephone calls involving Petitioner took place on January 23, 2012, January 26, 2012, February 2, 2012, and February 3, 2012.  *Id.*  The February 3, 2012 sealing order incorporated evidence obtained from telephone communications from January 20, 2012 until February 3, 2012.  SR at 933-936; SH at 22.  Therefore, even if counsel challenged the February 3rd sealing order, and the challenge was successful, evidence of the telephone calls from November 2011 until January 16, 2012 would still have been admissible at trial.  Accordingly, Petitioner cannot demonstrate that a successful motion challenging the February 3rd sealing order would have resulted in substantial prejudice.  *See United States v. Alnutt*, No. 5:08-CR-481 (FJS), 2013 WL 12225983, at *4 (N.D.N.Y. Sept. 6, 2013) (reasoning that a motion to suppress an eavesdropping warrant, even if successful, would not have "extinguished the evidence gathered when [the [d]efendant sold two firearms to a confidential informant" and thus, there was no basis to conclude that, but for his counsel's allegedly deficient performance, the matter would have been resolved differently), *aff'd*, 588 Fed. App'x 45 (2d Cir. 2014).

Based on the record, this Court cannot say that the state court's decision concluding that trial counsel could not be faulted for failing to make a losing argument was unreasonable or contrary to clearly established Supreme Court precedent.

Accordingly, this ground for relief is denied and dismissed.

25

### C. Prosecutorial Misconduct

Petitioner contends the prosecution engaged in misconduct because it failed to correct false testimony offered by Inv. Guiry at the suppression hearing regarding Judge Teresi's availability and failed to correct trial testimony from Mario Perez, a cooperating witness, concerning benefits extended to his child's mother in exchange for his testimony.  Pet. at 30-31.  Respondent argues the prosecutorial misconduct claim is unexhausted and meritless. *See generally* Dkt. No. 30.

### 1. Exhaustion

The AEDPA provides that an application for a writ of habeas corpus may not be granted until a petitioner has exhausted all remedies available in state court unless "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant."  28 U.S.C. § 2254 (b)(1)(A), (B)(I), (ii).  "The exhaustion requirement 'is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings[.]' " *Jimenez v. Walker*, 458 F.3d 130, 149 (2d Cir. 2006) (quoting *Rose v. Lundy*, 455 U.S. 509, 518 (1982)).

To satisfy the exhaustion requirement, a petitioner must do so both procedurally and substantively.  Procedural exhaustion requires that a petitioner raise all claims in state court prior to raising them in a federal habeas corpus petition.  Substantive exhaustion requires that a petitioner "fairly present" each claim for habeas relief in "each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citations omitted); *Fama v. Comm'r. of Corr. Servs*., 235 F.3d 804, 808 (2d Cir. 2000).  In other words,

26

a petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  The petitioner must have used the proper procedural vehicle so that the state court may pass on the merits of his or her claims.  *Dean v. Smith*, 753 F.2d 239, 241 (2d Cir. 1985); *Barton v. Fillion*, No. 9:03-CV-1377 (DNH/GJD), 2007 WL 3008167, at *5 (N.D.N.Y. Oct. 10, 2007).  "[W]hen a 'petitioner fail[s] to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the federal habeas court should consider the claim to be procedurally defaulted."  *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (quoting *Coleman v. Thompson*, 510 U.S. 722, 735 n.1 (1991)).

Here, Petitioner has not properly exhausted his prosecutorial misconduct claim in state court because he failed to raise this issue in his direct appeal or § 440 motion.  In his response to the Petition, Respondent addressed the exhaustion issue and opposed any further stay of the proceedings.  Dkt. No. 30 at 45.  Petitioner submitted a lengthy Traverse but did not respond to Respondent's exhaustion arguments and did request a stay.

Even assuming Petitioner had moved to re-impose the stay, the request would have been denied.  As discussed in this Court's October Order, the "stay and abeyance" procedure should be "available only in limited circumstances" where the petitioner can show (1) "good cause" for failing to "exhaust his claims first in state court" and (2) that his unexhausted claims are not "plainly meritless."  Dkt. No. 7 at 4 (citation omitted).  This matter was already stayed from eleven months.  Petitioner has never identified the missing "proof" necessary to pursue his prosecutorial misconduct claim and did not provide any explanation

27

as to how the unspecified "proof" is material to the pursuit of this claim.  Additionally,

Petitioner was convicted in May 2013 and offers no explanation why, after eight years, he still

has not obtained the "necessary proof."  Accordingly, Petitioner cannot demonstrate "good

cause" for a stay.

While Petitioner has not properly exhausted his prosecutorial misconduct claim, as

Respondent concedes, Petitioner could still present his unexhausted claim to the state courts

by filing a successive CPL § 440.10 motion.  *See* Dkt. No 30 at 40.  There is no time limit

within which an individual must bring a section 440.10 motion, and the statute specifically

states that a motion to vacate may be made "[a]t any time after the entry of a judgment[.]"

CPL § 440.10(1).  Section 2254 "prohibits federal courts from granting relief to an applicant

who has not exhausted the remedies available in the courts of the State," but allows "federal

courts to deny the petition, regardless of whether the applicant exhausted his state court

remedies." *Abuzaid v. Mattox*, 726 F.3d 311, 321 (2d Cir. 2013) (emphasis in original,

internal quotation marks omitted) (citing 28 U.S.C. § 2254(b)(1)(A), (b)(2)).  Unexhausted

claims may be denied on the merits if the claims are "plainly meritless" (*Rhines v. Weber*,

544 U.S. 269, 277 (2005)) or "patently frivolous."  *McFadden v. Senkowski*, 421 F.Supp.2d

619, 621 (W.D.N.Y. 2006); *see* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas

corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust

the remedies available in the courts of the State.").  Because Petitioner's unexhausted claims

fail under either standard, the Court will dispose of it.

### 2. Merits

"A conviction based on perjured testimony is analyzed under the Due Process Clause

of the Fourteenth Amendment."  *Kent v. Smith*, No. 9:05-CV-0785 (LEK/DRH), 2007 WL

2907350, at *9 (N.D.N.Y. Oct. 4, 2007) (citing *inter alia Napue v. Illinois*, 360 U.S. 264, 269 (1959)).  "To establish prosecutorial misconduct premised upon the presentation of perjury, [petitioner] must first establish that perjury was committed; *i.e.* that the testimony was 'actually, and intentionally, false.' "  *Major v. Lamanna*, No. 9:18-CV-0418 (DNH/TWD), 2021 WL 4267851, at *25 (N.D.N.Y. Sept. 3, 2021) (citing *Gibson v. Artus*, No. 04-CV-820 (LEK), 2008 WL 9434482, at *14 (N.D.N.Y. Mar. 21, 2008) (alternation in original) (collecting cases), *aff'd*, 407 Fed. App'x 517 (2d Cir. 2010)) *report and recommendation adopted*, 2021 WL 4263148 (N.D.N.Y. Sept. 20, 2021).  "The petitioner has the burden of demonstrating, by a preponderance of the evidence, that the witness committed perjury."  *Black v. Rock*, 103 F.Supp.3d 305, 317 (E.D.N.Y. 2015) (citation omitted).  Furthermore, the petitioner must establish that "(1) the prosecution knew, or should have known, of the perjury, and (2) "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury."  *Drake v. Portuondo*, 321 F.3d 338, 345 (2d Cir. 2003) (quoting *United States v. Agurs,* 427 U.S. 97, 103 (1976)).  "Petitioner cannot succeed unless 'but for the perjured testimony, [he] would most likely not have been convicted.' "  *Cunningham v. Bennett*, No. 02 CV 4635, 2005 WL 1162475, at *8 (E.D.N.Y. May 16, 2005).

### a.  Inv. Guiry

Petitioner argues the daily calendars are proof that Inv. Guiry committed perjury and broadly characterizes Inv. Guiry's testimony at the suppression hearing "about the whereabout[s] and availability of Justice Joseph C. Teresi surrounding the November 14th and November 28th sealing order" as "false or misleading."  *See* Pet. at 30.

In Part IV(B)(2) *supra*, the Court summarized Inv. Guiry's testimony regarding the availability of judges for sealing orders.  Of note, Inv. Guiry testified that he did not make any

telephone calls in an effort to locate Judge Teresi or Judge Breslin.  Rather, his staff informed him that Judge Teresi was unavailable on November 14th and November 28th.  SH at 41-44.  Similarly, his staff told him Judge Teresi was out of town on February 3rd and that Judge Breslin was "not present for half the day" and "not in the building at the time we wished to seal."  *Id.* at 48-50.  Inv. Guiry did not make any telephone calls in an effort locate other Supreme Court Justices on February 3rd, but relied upon his staff.  *Id*. at 51.

Even if the Court accepts Petitioner's interpretation of the daily calendars (i.e., that the term "conferences" on the calendar meant that the Judge was in the courthouse), Inv. Guiry's testimony was not "actually or intentionally false."  At best, Inv. Guiry's testimony is inconsistent with the information in the calendars.  *See Dinsio v. Donnelly*, No. 9:03-CV-0779 (LEK/VEB), 2007 WL 4029221, at *7–8 (N.D.N.Y. Nov. 15, 2007) (holding that alleged discrepancies between witness testimony and dispatch records does not amount to perjury); *see also Dearstyne v. Mazzuca*, 48 F.Supp.3d 222, 285 (N.D.N.Y. 2011) (finding that the petitioner failed to offer direct evidence to suggest that the testimony was knowingly false or that the witness "might have had a motive or interest in presenting perjured testimony").

Finally, Petitioner proffers no evidence that the prosecution would have or should have known that Inv. Guiry was lying about his efforts to locate judges to obtain sealing orders.  "In the absence of evidence of falsity, much less known falsity, Petitioner cannot show that the prosecutor engaged in misconduct at all in presenting the testimony of the People's witnesses. Petitioner certainly cannot demonstrate that perjury affected the jury's judgment, in the absence of any evidence of perjury in the first instance." *Ortiz v. Attica Corr. Facility*, No. 15 CV 02698, 2017 WL 7736415, at *24 (S.D.N.Y. Nov. 21, 2017), *report and recommendation adopted*, 2018 WL 1010295 (S.D.N.Y. Feb. 20, 2018).

**b. Perez**

Petitioner claims that the prosecutor failed to correct trial testimony from Mario Perez, a cooperating witness, concerning benefits extended to his child's mother in exchange for his testimony.  Pet. at 30-31.

During Perez's direct examination, the prosecutor played telephone calls.  Perez listened to the recorded telephone calls and provided the court with context related to who was speaking and the meaning of certain phrases and conversations.  T3 at 711-723, 748-771, 809-816, 828-841.  The prosecution posed questions to Perez related to the terms of his plea agreement and Perez testified that his girlfriend, Daerling Paez, was also arrested as part of the case.  T3 at 690-691, 709.[13]

On cross examination, Perez was asked whether he engaged in conversations with the prosecutor regarding Paez.  T3 at 849.  Perez stated, "[i]t came up, but like everybody else in the indictment, everybody has a cop-out plea.  I mean, I have nothing to do with her sentence, you know."  *Id*.  Petitioner's counsel continued to address the issue and Perez responded:

> A.  I never seen anything in writing saying that Ms. Paez is going to get her charges reduced, you know, to clarify. It was a concern of mine that, you know, for her best outcome, but as far as them promising me anything, there was no promises.
>
> Q.  So you just said you never saw anything in writing?
>
> A.  Right.
>
> Q.  And you also said it was discussed?

---

[13]  "T3" refers to Trial Transcript 3 of 4, found at Dkt. No. 32-5.  Citations to the submission refer to the pagination generated by CM/ECF, the Court's electronic filing system.

A.  Was discussed, yes.

Q.  Can we agree on that?

A.  Yes.

Q.  Now, it's true that Daerling Paez is not an American citizen; isn't that true?

A.  Correct.

Q.  She's a native of Venezuela, is she not?

A.  Correct.

Q.  And there was the possibility she would be deported from this country if she were convicted of a crime, of a drug charge; you were aware of that?

A.  Yes, I was aware of that.  It was a concern of mine.

T3 at 850-851.  Perez testified he knew she had "pled to something" which he hoped was not a deportable offense and that she now got to be home with his daughter.  *Id*. at 896.

Perez's cooperation agreement is not in the record before the Court and there is no evidence related to benefits extended to Paez.  Thus, Petitioner has not established that Perez's testimony was actually and intentionally false nor that the prosecution knew or had reason to know that Perez was allegedly committing perjury.  Morever, Perez's testimony was not the only evidence of Petitioner's participation in the telephone conversations therefore, the record does not support the conclusion that it is reasonably likely that Perez's alleged perjured testimony affected the judgment of the jury.  The telephone calls were admitted into evidence through Inv. Guiry who testified about the investigation and his surveillance of Petitioner which involved the sale of cocaine on various occasions.  SR at 392, 394.  The prosecution played the telephone conversations for other witnesses including

32

co-conspirators, Anthony Lugo, Ashanti Harris, and Drew Greene. *Id.* at 390. The witnesses identified Petitioner's voice on the calls, provided context for the telephone calls, and identified Petitioner in court. T3 at 1022-1032, 1046-1060, 1166-1173, 1206-1210. Additionally, the jury was provided with transcripts of the telephone calls. *Id.* at 959. Indeed, Petitioner concedes, in his Traverse, that "the people elicited hours of testimony from Ashanti Harris and Anthony Lugo which encompassed [December 1, 2011] traffic stop and seizure of 300 grams of heroine. These narcotics would become a major focal point in supporting the People's major trafficker charge against petitioner." Dkt. No. 36 at 18.

Based upon the substantial evidence of guilt presented at trial, the Court finds no evidence to suggest that Perez's alleged false testimony related to Paez's cooperation would have impacted the outcome of the trial. *See Clemmons v. Lee*, No. 13 CIV 04969, 2021 WL 6750664, at *23 (S.D.N.Y. Oct. 28, 2021) (finding that misrepresentations regarding a plea deal did not impact the outcome of the trial where other evidence corroborated testimony and supported conviction), *report and recommendation adopted*, 2022 WL 255737 (S.D.N.Y. Jan. 27, 2022).

For these reasons, this Court finds Petitioner's claim that the prosecutor engaged in misconduct is without merit. Accordingly, the Court denies and dismisses Ground Three of the Petition.

## V.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the Clerk of the Court shall amend the caption to substitute Mark Miller for Mark Royce; and it is further

**ORDERED** that the Petition, Dkt. No. 1, is **DENIED AND DISMISSED** in its entirety;

and it is further

ORDERED that no Certificate of Appealability ("COA") shall issue because petitioner

failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. §

2253(c)(2) requires;[14] and it is further

ORDERED that the Clerk serve a copy of this Decision and Order on the parties in

accordance with the Local Rules.

Dated: <u>September 26, 2022</u>
       Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge

---

[14]  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation" (emphasis in original)).